RECEIVED

2014 DEC 30 PM 1 19

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case Number:

TRACY LEE KENDALL,

Plaintiff,

8:14cv3224 T 35 AEP

v.

ROBERT A. McDONALD, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS,

Defendant.
_____/

## PLAINTIFF TRACY LEE KENDALL'S COMPLAINT

Plaintiff, Tracy Lee Kendall, by and through his undersigned counsel, files this, his complaint against Defendant, Robert A. McDonald, Secretary, Department Of Veterans Affairs (hereinafter, "Defendant"), an employer as defined in the state of Florida, and states as follows in support thereof:

### NATURE OF THE ACTION

1. This is a proceeding for reinstatement, damages and injunctive relief to redress the deprivation of rights secured to Plaintiff by Sections 501 and 504 of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq. This case relates to previously dismissed without prejudice action: 8:14-cv-00924-VMC-TGW.

### PARTIES

TPA-27602
$400

2. Tracy Lee Kendall is an individual currently residing in Winchester, Tennessee. He is a citizen of the United States and a resident of the state of Tennessee. Plaintiff is a person entitled to protection pursuant to the provisions of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq.

3. At all relevant times, Plaintiff Tracy Lee Kendall was an employee or employment applicant of Defendant.

4. On information and belief, Defendant is an agency of the Federal Government with a place of business in Pinellas County, Florida.

5. At all times relevant to the allegations in this Complaint, Defendant operated from a facility in Pinellas County.

6. Defendant is engaged in adiminstration of veterans' health care services.

7. At all relevant times, Defendant employed more than 75 people. Defendant was the employer of Plaintiff Tracy Lee Kendall at all times relevant to this action.

## JURISDICTION

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter involves a federal question based upon the Rehablitation Act of 1973 29 U.S.C. §§ 701 et seq. This Honorable Court has jurisdiction over this matter as this case arises under the equal protection clause of the Fourteenth Amendment to the United States Constitution and poses a question of federal law.

9. The Tampa District Court is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which a substantial part of the events or omissions giving rise to the claims occurred.

## VENUE

10. The unlawful employment practices alleged below were within the state of Florida, Pinellas County. Accordingly, venue lies in the United States District Court for the Middle District of Florida, Tampa Division under 29 U.S.C. § 1391(b) and 28U.S.C. § 1391(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff Tracy Lee Kendall timely filed this action, as was his right, after receiving a written appeal decision from the U.S. Equal Employment Opportunity Commission, Office of Federal Operations. A copy of said decision is attached hereto and marked Exhibit "A." Said Exhibit "A" is incorporated herein as though set forth in full. Plaintiff regrets said EEOC has failed to effect voluntary compliance with the requirements of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq. on the part of said Defendant.

## STATEMENT OF FACTS

12. Plaintiff Tracy Lee Kendall, who had a distinguished military career cut short by injury, applied for an engineering technician position with the Bay Pines Veterans Administration Healthcare System ("Bay Pines VARCS") in May 2008. Plaintiff has had both knees replaced resulting from the service connected injury in 1988. He has physical limitations with standing, walking, climbing and bending. Plaintiff's disability is permanent and he is unable to walk or stand for extended periods of time and cannot work on his knees or around wet,

slippery surfaces. On March 6, 2009 Plaintiff filed, inter alia, a disability discrimination claim for non-selection.

13. Plaintiff's application for the engineering technician position indicated that he was a 60% disabled veteran entitled to a 10-point veteran's preference as well as 38 U.S. Code § 3117 Employment assistance (specific chapters 31 & 41, Job Counseling, Training and Placement Services for Veterans).

14. Due to his service connected disabilities and a federal government disability rating greater than 30%, Mr. Kendall qualified for the Vocational Rehabilitation and Employment Act special appointing authority. He was also qualified for education and vocational rehabilitation training under the act. The act is specifically designed by the Congress to enable disabled veterans to obtain employment with the Federal government. Qualifying disabled veterans are not only trained, they are encouraged to apply for jobs for which their training qualified them. The act entitles a sufficiently disabled veteran to rehabilitation; various other services; initial and extended evaluation; an individual vocational rehabilitation; allowances; living services and assistance; loans; vocational rehabilitation for hospitalized veterans; rehabilitation resources; employment assistance; and personal training and development.

15. Mr. Kendall was specifically trained for jobs, including, as an engineering technician. In fact, Mr. Kendall was told about the opening by his counselors and encouraged to apply.

16. Deborah Hanby, a non-veteran female who had worked for Bay Pines as a wage grade 3 housekeeping aid since 2006, was hired into the engineering technician position.

17. James Charlton was the selecting official. He reviewed all applicant packages. Mr. Charlton has claimed he did not know Mr. Kendall was disabled. However, Mr. Charlton's review of Mr. Kendall's applicant package would have disclosed on an SF 15 form that he was a 10-point preference because he was rated greater than 30% disabled. The application reflected he was receiving education and vocational training under Title 31 which is only for disabled veterans. It contains an October 25, 2007 letter saying he had a 30% or greater disability rating. Moreover, Mr. Kendall was listed as a VRA applicant on the certification. Therefore, Mr. Charlton had to know Mr. Kendall was a disabled veteran. Moreover, Mr. Keith Lichtenberg, a human resources representative, prepared the certification and provided it to Mr. Charlton. He would have had to explain what VRA meant to Mr. Charlton when explaining the certification and the treatment Mr. Kendall was entitled to receive.

18. According to Mr. Charlton, Ms. Hanby was selected because she had CAD experience, knowledge of construction theories and practices. During the investigative stage, the Defendant took the position that the decision was made on the basis of the paper applications and not upon interviews.

19. Ms. Hanby's partial application gives a description of her duties and accomplishments that are short on the above areas relied upon by Mr. Charlton.

20. Ms. Hanby's own description of what she did clearly shows a substantial part of what she did was secretarial and administrative work such as filing, maintaining files, ensuring appropriate supplies and supporting other people's work.

21. Ms. Hanby's more complete application also discloses that the veterans' 10-point preference is improperly marked on her application as being something she has.

22. Ms. Hanby's application also reflects that she did not have the required educational experiencense. She graduated from high school. The position advertised was a GS-07 position. For this wage grade 3 employee to even qualify for this GS-07 position, she needed college level education and/or particular specialized experience. A review of Ms. Hanby's written application shows she did not have this education. Therefore, Mr. Charlton and Mr. Lichtenberg apparently overlooked her lack of education because she had "specialized" experience. However, her experience was not specialized to this position.

23. Of particular interest concerning Ms. Hanby is she did not provide any information of her ability to read and interpret drawings at a journeyman level. Moreover, her explanation under three other critical factors was so conclusory as to be devoid of specifics and belies a lack of knowledge. Please see attached hereto and incorporated herein, Plaintiff's exhibit B, Ms. Hanby's application and related documents.

24. Mr. Kendall's application shows he possessed considerably greater and specifically targeted education than Ms. Hanby. Mr. Kendall had been trained by the V.A. for precisely this type of job and had taken a number of courses at the college level. He provided an extensive description of his knowledge under each of four criteria. Mr. Charlton has described his qualifications and his education as impressive.

25. Mr. Charlton was critical of Mr. Kendall's application because it showed less overall experience than Ms. Hanby and because he had had three recent jobs. Mr. Kendall had the recent jobs because he worked for small companies in the private sector and he lost those jobs when he had three different surgeries because of his disability. All of Mr. Kendall's experience, however, is specific to this position. Moreover, he has considerable construction

related experience prior to this and in the Army. His experience was not administrative or secretarial.

26. It appears Mr. Charlton briefly interviewed Ms. Hanby but none of the other candidates.

27. In deposition in the EEOC administrative proceedings in this matter, Mr. Charlton denied the interview took place, Ms. Hanby claimed it was for other position(s).

28. The conscious discrimination toward Mr. Kendall did not stop there. Under VRA Section 3117, the Bay Pines VAHCS was mandated to give Mr. Kendall the benefit, "of any applicable provisions of law or regulation, providing special consideration or emphasis or preference for such veteran in employment ... " Title 5, Section 3318 relating to competitive service; selection from certificates states in pertinent part:

> (a) The nominating or appointing authority shall select for appointment to each vacancy from the highest three eligibles available for appointment on the certificate furnished under section 3317(a) of this title, unless objection to one or more of the individuals certified is made to, and sustained by, the Office of Personnel Management for proper and adequate reason under
> regulations prescribed by the Office.
>
> (b) (1) If an appointing authority proposed to pass over a preference eligible on a certificate in order to select an individual who is not a preference eligible, such authority shall file written reasons with the Office for passing over the preference eligible. The Office shall make the reasons presented by the appointing authority part of the record of the preference eligible and may require the submission of more detailed information from the appointing authority in support of the passing

> over of the preference eligible. The Office shall determine the sufficiency or insufficiency of the reasons submitted by the appointing authority, taking into account any response received from the preference eligible under paragraph (2) of this subsection. When the Office has completed its review of the proposed Passover it shall send its findings to the appointing authority and to the preference eligible. The appointing authority shall comply with the findings of the Office.
>
> (2) In the case of a preference eligible described in section 21 08(3)(C) of this title who has a compensable service-connected disability of 30 percent or more, the appointing authority shall at the same time it notifies the Office under paragraph (1) of this subsection, notify the preference eligible of the proposed Passover, of the reasons therefore, and of his right to respond to such reasons to the Office within 15 days of the date of such notification. The Office shall, before completing its review under paragraph (1) of this subsection, require a demonstration by the appointing authority that the Passover notification was timely sent to the preference eligible's last known address."

Mr. Kendall was not notified under 5 U.S.C. §3318 and provided an opportunity to object. Rather, Mr. Kendall was notified in late December, 2008 roughly six months after selection. That letter was dated November 18, 2008 and informed him of the selection and failed to tell him any rights he may have.

29. In proceedings before EEOC, defendant produced Mr. Phillip Works to justify not applying 5 U.S.C. § 3318. His rationale seemed to be at one point that it was inapplicable because this was merit promotion position. Under 5 CFR 335.106, Mr. Kendall was entitled

to be equally considered under merit promotion rules rather than be discriminated against in the type of information considered by the selecting official. He should have been interviewed along with Ms. Hanby and he should not have been treated as being at a different consideration level. The certification also inexplicably listed Mr. Kendall as an "Exclusion to Merit Promotion" which under 5 CFR 335.106 is not true. In addressing this Mr. Works thought Mr. Kendall was VOEA not VRA. He then claimed the position in question was a competitive position. Nonetheless in essence he claimed 5 U.S.C. 3318 did not apply because Mr. Kendall was not being treated as equally competing on the same list as Ms. Hanby even though under 5 CFR 335.106 he is entitled to compete with her. Ultimately despite 5 CFR 335.106 Mr. Kendall was not allowed to compete under merit rules and yet he was also denied his rights for this competitive position and his notice rights under 5 U.S.C. 3318.

30. After Mr. Kendall complained about his situation, Paula Buechele introduced him to Rachel Seybold. She told him that the way to get into Bay Pines VAHCS was take a housekeeping job. When he was told this, both knew that Mr. Kendall was a more than 60% disabled military veteran who had had two knees replaced. Mr. Kendall was told that there were many things he could do in housekeeping and that would get him in the door. He told them he could not work around wet floors. He applied for the job. He disclosed on his application that he had had knee replacements and that he had certain limits in his ability to bend or lift. The Bay Pines VAHCS doctor, Theophil Sutton, M.D., passed him.

31. Mr. Kendall was oriented. At the conclusion of orientation, he successfully worked on a renovation project for about 3 days. Following that, Mr. Kendall was handed a mop to work

in a wet area. Mr. Kendall said that he was concerned about working in the wet area because of his two artificial knees and asked what could be done. He was told to do this housekeeping job, he would have to be willing to work on wet surfaces and do other things that were incompatible with his two artificial knees and his physical disability.

32. As a result, Mr. Kendall was originally planning to turn in his badge. However, he was encouraged by the person he was going to be handing it to, Gail Goldman, to speak to a supervisor and request reasonable accommodation. She said there were lots of other jobs in EMS. She explained a need for reasonable accommodation paperwork.

33. Mr. Kendall was unclear of what was involved and when asked about a job he wanted said he would like the draftsman job. However, there were desk jobs and other jobs that did not require Mr. Kendall to engage in work that was contrary to his disability.

34. On February 16, 2009, Mr. Kendall submitted his reasonable accommodations package. That package contains a physician statement. When Mr. Kendall submitted his physician statement, no one had counseled him nor informed him that he was AWOL or spoke in any way to him. No one claimed that he was involved in any wrongdoing. Mr. Kendall was sent home. He was not told to call in from the time that he spoke about his problems to the time that he submitted his reasonable accommodation package. During that period of time, Mr. Kendall was never cited for AWOL. There is no written record of Mr. Kendall being spoken to about calling in nor counseled concerning that. In fact, Mr. Kendall understood that by putting in a package for reasonable accommodation, he had to wait for that to be decided. On March 2, 2009, Mr. Kendall submitted a summary of the physician's statement. On March 6, 2009 he filed an EEO claim. Shortly after this, he was terminated.

35. The termination was supposedly effective on March 16, 2009. However, there appears to be some inconsistency in the reason management had for terminating him and the facts supporting this. The reason contained in a March 13, 2009 letter from Bonnie Max of human resources was, "David Rouse, Chief, Environmental Management Service, has recommended that you be terminated from your position for failure to qualify during your trial period."

36. Mr. Tura and the defendant argued Mr. Kendall was terminated for misconduct. However, the defendant's dates given make little sense given the reasonable accommodation paperwork, Mr. Kendall's trips to the VA, and the actual letter of termination. They also conflict with the fact that the defendant continued to process Mr. Kendall's reasonable accommodation package for several more weeks.

37. Notwithstanding Mr. Kendall's submission of reasonable accommodation paperwork and doctor's note, Mr. Kendall had to call in daily at least until the doctor wrote a note. Nevertheless, having obtained two physician statements which he knew had come in because a reasonable accommodation package had been filed some days before, he purportedly nevertheless terminated Mr. Kendall. It is undisputed that no written documentation was sent to Mr. Kendall that shows prior to receiving the report from Dr. Lyon (or after for that matter), Mr. Kendall was told he was doing anything wrong. However, Mr. Tura claims he marked Mr. Kendall AWOL from March 2 to 5 until he got Dr.
Lyon's March 2, 2009 letter on March 5, 2009.

38. In his reasonable accommodation application, Mr. Kendall stated, "EMS is responsible for landscaping, I would be able to mow grass, or if transportation of supplies by motorized

11

carts is available, I could do that ... any job which would eliminate being on my feet for long. I feel that I am capable of performing many office tasks also."

39. Positions of the type Mr. Kendall requested were available in EMS. These include housekeeping, transportation, grounds, pest control, interior design and waste management. These jobs also include driving motorized golf carts and mowing grass. It also includes desk jobs such as program support which includes jobs involving typing, filing, clerical work and some computer work. These are all jobs Mr. Kendall could perform.

40. According to EMS supervisors, Mr. Kendall would be unable to be accommodated in EMS. Mr. Kendall filed an EEO claim for non-selection on March 6, 2009. His first claim was for non-selection as the Engineering Tech.

41. After having had a completed reasonable accommodation application and after filing an EEO claim, Mr. Kendall he was terminated.

42. Termination was "effective" March 19, 2009. However, Mr. Kendall was not told about the termination until May 19, 2009 during a mediation. EEO counselors had been able to contact Mr. Kendall in the interim but otherwise defendant did not.

43. Under V.A. rules or procedures, when a reasonable accommodation application is sent to human resources, it is given to Regional Counsel for them to determine whether or not reasonable accommodation is appropriate as a legal matter. It is also given to a VA doctor.

44. V.A. Regional Counsel initially determined that reasonable accommodation was appropriate under these circumstances.

45. The V.A. doctor was asked to determine whether reasonable accommodation would work on March 30, 2009. Thereafter, he determined Mr. Kendall did not qualify.

46. Dr. Sutton failed to consider the other jobs that were available for Mr. Kendall in EMS. He also failed to consider tailoring the job given that Mr. Kendall had performed the renovation work, but objected to the wet surface work.

47. Mr. Kendall had repeatedly asked for his rights under the law.

48. On March 6, 2009, Mr. Kendall filed an EEO for his non-selection as Engineering Tech. It was shortly after he filed that, that EMS and human resources decided to terminate him and deny him reasonable accommodation.

49. Human resources appears to have been of the opinion that notwithstanding his request for reasonable accommodation he can still could be terminated for misconduct. Mr. Tura claimed that Mr. Kendall engaged in "the misconduct" of not reporting in for a few days. This was done despite the fact that there is no counseling, no written record of this ever having been presented to Mr. Kendall. Subsequent to that, the doctor did not consider any other type of EMS job in finding him unqualified.

## STATEMENT OF CLAIMS

## COUNT I: RETALIATION

50. Plaintiff Tracy Lee Kendall realleges and incorporates in this Count I paragraphs 1 through 49.

51. This is a cause of action for retalliation under the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq.

52. Plaintiff Tracy Lee Kendall engaged in the statutorily protected activities of applying for work as an engineering drafting technician and then of accepting a lower postion as a housekeeping aide, reporting to work and informing supervisors of a disability and a need for reasonable accomidations. He suffered adverse employment actions of denial of the engineer position he was both qualified for and entitled to preference for, hired for a lower position, and then terminated. The causal link between these events is demonstrated, at least in part, by the close proximity in time to these events, which were less than four months apart. But for the discrimnation and retalliation by the Defedant's agents toward Plaintiff Tracy Lee Kendall, he would be employed as an engineer.

53. Plaintiff Tracy Lee Kendall's employment was terminated by Defendant on or about May 19, 2009.

54. Defendant refused to retain Plaintiff Tracy Lee Kendall.

55. Defendant's refusal to retain Plaintiff Tracy Lee Kendall was in retaliation against Plaintiff Tracy Lee Kendall.

## COUNT II: DISABILITY DISCRIMINATION

56. Plaintiff Tracy Lee Kendall reavers and incorporates by reference all of the allegations set forth in paragraphs 1 through 49 herein.

57. Plaintiff Tracy Lee Kendall suffers from having both knees replaced and multiple surgeries for this diability. This constitutes a physical impairment that substantially limits

one or more major life activities. He both has a record of such impairment and, upon information and belief, was regarded by his employer as being so impaired.

58. Plaintiff Tracy Lee Kendall's disability was both a determining factor and the but for cause of Defendant's decision to fail to hire, hire for lessor position and then terminate him.

59. Defendant knowingly and willfully discriminated against Plaintiff Tracy Lee Kendall on the basis of his disabilities in violation of the Rehabilitation Act of 1973. In addition, he avers that Defendant's unlawful and discriminatory termination of his employment on account of his diability violates the provisions of the Rehabilitation Act of 1973 29 U.S.C. §§701 et seq., justifying an award, inter alia, of backpay, front pay, benefits and compensatory and liquidated damages against Defendant.

60. Plaintiff is Disabled under the Rehabilitation Act of 1973 29 U.S.C. §§701 et seq. Tracy Lee Kendall was a qualified individual with accommodations for the housekeeping aide position. By creating the adversity of termination because of this disability within four months after being hired, Plaintiff Tracy Lee Kendall was unlawfully discriminated against because of the disability. He was also discriminated against because of his disability when he was not hired for the engineering position (for which he would not have needed an accommodation but had informed the Defendant of his status as preferential as an above 30% disabled veteran) but offered the housekeeping aide position. His disability substantially limits one or more major life activities (standing at length, bend, walk, climb, working on wet floors, etc.). He was regarded by the defendant as being disabled. He was fired within four months after informing Defendant's agents of his request for reasonable

accommodation. Plaintiff Tracy Lee Kendall was given pretextual reasons for the termination.

## DAMAGES

61. As a direct and proximate consequence of Defendant's unlawful and discriminatory employment policies and practices, Plaintiff Tracy Lee Kendall has suffered a loss of income, including, but not limited to, past and future wages, benefits, expenses, payment for insurance and various other expenses, pain and suffering, compensatory damages and punitive damages, all to be specified at trial.

## INJUNCTIVE RELIEF

62. Plaintiff Tracy Lee Kendall restates, realleges, reavers and hereby incorporates by reference any and all allegations of paragraphs 1 through 22, inclusive, herein. In addition, Plaintiff Tracy Lee Kendall alleges that Defendant's discriminatory actions herein must be enjoined by this Court in order to force to Defendant to comply with law. It is suggested that the injunction be specific in enjoining Defendant and its employees, agents and representatives.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Tracy Lee Kendall respectfully prays for judgment against Defendant as follows:

A. For a money judgment representing compensatory damages, including, lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B. For a money judgment representing punitive damages for Defendant's willful violations of law; liquidated (compensatory) damages pursuant to 29 U.S.C. §626(b);

C. For a money judgment representing prejudgment interest, if applicable;

D. Reinstatement and restoration of benefits upon conditions that Plaintiff Tracy Lee Kendall and supervisors be enjoined to comply with the law.

E. That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable provisions;

F. For lost monies and damages pertaining to out-of-pocket expenses, especially related to, but not limited to, medical expenses, and loss of retirement benefits;

G. For suit costs, including an award for reasonable attorney's fees, expert fees; and for such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff Tracy Lee Kendall herein demands a trial by jury of all issues in this action pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated this 23rd day of December, 2014.

_____
Kevin F. Sanderson, Esq.
Florida Bar No. 598488
Kevin F. Sanderson, Chartered
690 South Tamiami Trail
Osprey, Florida 34229

Tel: (941) 244-0468
Fax: (941) 445-4716
kevin@srqattorney.com
Trial Attorney for Tracy Lee Kendall