UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY LEE KENDALL,

        Plaintiff,

v.                          Case No. 8:14-cv-3224-T-33AEP

SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS,

        Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant the Secretary of Veterans Affairs' Motion for Summary Judgment (Doc. # 27), filed on January 4, 2016.  Plaintiff Tracy Lee Kendall filed a Response in Opposition to the Motion (Doc. # 28) on January 19, 2016.  For the reasons that follow, the Court grants the V.A.'s Motion for Summary Judgment.

**I.**    **Background**

    **A.**    **Kendall's Employment History and Knee Injuries**

Kendall enjoyed a distinguished military career beginning in 1983. (Doc. # 28-6 at 3).  However, he injured his left knee in a training accident in 1988. (Kendall Dep. Doc. # 27-1 at 67).  Kendall testified that he retired from the military in 1989 due to the injury sustained to his left knee. (Id. at 69).  From 1990 through 1991, Kendall worked for I.B.P., a pork production facility, as the Building Maintenance Supervisor. (Doc. # 28-6 at 3).  However, in that position, he

fell down the stairs further injuring his left knee. (Kendall Dep. Doc. # 27-1 at 69). Since that time, Kendall has undergone over 25 knee operations, including having both knees replaced with artificial knees. (<u>Id.</u> at 70). Kendall explained that, although his initial injuries were sustained to the left knee, "wear and tear and favoritism over the years" on the right knee lead to injury. (<u>Id.</u>).

Notwithstanding his knee issues, Kendall has held numerous positions in the private sector. As stated on his resume, he worked as an Assistant Maintenance Supervisor at an Embassy Suites Hotel from 1992 to 1994, and as a Sales and Service Technician at City Wide Heating and Cooling from 1994 to 1995. (Doc. # 28-6 at 3). He then came to be employed as a Sales and Service Technician from 1995 to 1996, at Alzarez/Taylor Air-Conditioning/Plumbing. (<u>Id.</u>). He moved on to become a Department Manager at Home Depot from 1996 to 2000. (<u>Id.</u>). Then, he served as a Building Facilities Manager at Dan's Island from 2000 to 2001. (<u>Id.</u>). Thereafter, he held the position of Technician for Airtron from 2001 to 2002. (<u>Id.</u>).

Beginning in 2002, Kendall enrolled in St. Petersburg College. (<u>Id.</u>). Kendall holds two Associate of Science degrees - one in Architecture and Building Construction and

2

one in Drafting and Design. (Kendall Dep. Doc. # 27-1 at 6). He also holds an Associate of Arts degree in "general education" as well as other "certificates." (Id.). The V.A. paid $65,000 for Kendall's college courses. (Id. at 117).

From 2005 to 2006, Kendall was a Mechanical Draftsman at Energyair, Inc., and for two months in 2007, he worked for Advanced Systems Engineering. (Doc. # 28-6 at 2). He was then employed from 2007 to 2008, designing cabinets for a dental office at Boyd Industries. (Id.). Kendall testified that he now owns his own design company. (Kendall Dep. Doc. # 27-1 at 9). At the time of his November 17, 2015, deposition, Kendall testified that he was 55-years old. (Id. at 12).

### B.   Kendall's Application for the VA Drafting Position

In 2008, the V.A. announced the opening of a position for an Engineering Technician (Drafting) at the Bay Pines V.A. facility. (Doc. # 28-5 at 90). Kendall was receiving vocational rehabilitation through the V.A., and "they had suggested that seeing how I went through a V.A. sponsored program for that type of position, they recommended that I apply for that job." (Kendall Dep. Doc. # 27-1 at 40-41). In May of 2008, Kendall submitted his 27-page resume packet to the V.A., hoping to get the job. (Id.).

Although Kendall was qualified as eligible to fill the

3

job, he was ultimately not selected and was notified of his non-selection in on November 18, 2008. (Doc. # 1 at ¶ 28). The Selecting Official, James Charlton, has been deposed twice in this matter, and he explained that he received approximately six or seven applications for the Drafting position that had been pre-sorted by the V.A. Human Resources Department. (Charlton Dep. Nov. 16, 2015, Doc. # 27-2 at 6). Charlton, who holds a Supervisory Engineering Technician position at the V.A., explained that he whittled the applications down to the 27-page packet submitted by Kendall and a three-page application submitted by an individual named Debra Hanby. (Id. at 4, 26).

He indicated that he ultimately selected Hanby over Kendall as follows: "It came down to basically Mr. Kendall and Ms. Hanby.  In looking at Mr. Kendall's experience, and looking at Debra's, Mr. Kendall had multiple jobs over a small timeframe, Ms. Hanby had one job with roughly nine years experience doing CADD, and seemed more stable to me for employment." (Id. at 26).[1]  Charlton also stated that since Hanby was a current V.A. employee (employed in the housekeeping department), she was already knowledgeable about

---

[1] CADD stands for "Computer Aided Design and Drafting." (Doc. # 27-4 at 4).

the Bay Pines "campus," "facility," and the "people." (Id.). He remarked that Kendall was "highly educated" but "the bottom line was Ms. Hanby had nine years solid experience at one job." (Id.).

Charlton does not dispute that prior to selecting Hanby for the position, he spoke with her son and her husband about the position. (Charlton Dep. Feb. 2, 2010, Doc. # 28-3 at 9). Hanby's son, Ryan Boergers, is a "work leader" under Charlton. (Id. at 22). Charlton stated that he and Boergers "go get a beer after work on Fridays." (Id. at 42). In addition, Hanby's husband, Paul Hanby, works in the Engineering department of the V.A. and Charlton testified that he has seen Debra Hanby at V.A. picnics and parties. (Id. at 9). Charlton also briefly discussed the open position with Hanby prior to her submission of an application, but Charlton testified that he did not consider his discussion with her to be a formal interview. (Id. at 21).

Charlton acknowledged that the Drafting position would have been a good fit for a disabled veteran and that Kendall's status as a 60% disabled person with a 10-point Veteran preference would not have disqualified him in any way. (Charlton Dep. Nov. 16, 2015, Doc. # 27-2 at 24-25). Charlton remarked: "Based on his application, it says he's 60 percent

5

disabled.  Now, that can be - mean a plethora of things.  I have several employees of mine now that are 90 percent disabled, but that doesn't mean they can't work and be functioning carpenters, electricians or whatever.  The 60 percent disability or the fact that he's disabled is irrelevant in this job." (Id. at 25).  The record reflects that Hanby marked that she was entitled to a Veteran's preference on her application, but that turned out to be an error. (Id. at 20).

### C.   Kendall is Hired in the Housekeeping Department

In January of 2009, after Kendall learned that he was not selected for the Drafting position, he came by Charlton's office at least three times and questioned Charlton's hiring decisions. (Charlton Dep. Feb. 2, 2010, Doc. # 28-3 at 38-39). Charlton referred Kendall to the Human Resources Department. (Id.).

Kendall explains that after asking numerous questions regarding his non-selection for the Drafting position, the Human Resources Department offered him a position as a housekeeping aid. (Kendall Dep. Doc. # 27-1 at 57-58). The letter confirming his employment as a housekeeping aid explained that he was subject to a two-year "trial period." (Doc. # 28-5 at 97).  In connection with the housekeeping aid

6

position, "[t]he Certificate of Medical Examination indicated that the functional requirements for the Housekeeping Aid position included prolonged walking and standing, kneeling, bending, climbing, slippery or uneven walking surfaces, working on ladders or scaffolding and working with hands in water." (Doc. # 27-4 at 6). Kendall signed the Certificate of Medical Examination and attested that he did not have "any medical disorder or physical impairment which would interfere in any way with the full performance of the[se] duties." (Id.; Doc. # 1-1 at 2).  He attended new employee orientation for a few days and then, for his first assignment, he performed duties such as "[v]acuuming, cleaning windows, cleaning mirrors, [and] sweeping." (Kendall Dep. Doc. # 27-1 at 59).

Around his second week on the job, he was asked to mop a floor. (Id. at 60).  Kendall refused. (Id.). According to Kendall, he was instructed "to go through the reasonable accommodations" process. (Id. at 61).  As a part of that process, Kendall was provided with a form to be completed by his physician regarding his limitations. (Id.).  Kendall's physician completed the form, and Kendall submitted the form to Heather Nichol without looking at it. (Id. at 64).  Kendall testified that he did not read what the doctor wrote on the

form regarding his limitations. (<u>Id.</u> at 63). Kendall indicates that Nichol told him to go home and that the V.A. would contact him "when they find work" that he could perform. (<u>Id.</u> at 65).

Rather than waiting to be contacted, "roughly one week later, [Kendall] drove back to the facility" and questioned Nichol about the status of his accommodation request. (<u>Id.</u>). She reminded him that he was to wait to be contacted. (<u>Id.</u>). Undeterred, Kendall returned to Nichol's office one week later and continued to press her about the reasonable accommodation process. (<u>Id.</u> at 66). Kendall does not remember if he returned to Nichol's office for a third time. (<u>Id.</u>). He "got tired of waiting" so he filed an EEOC complaint in March of 2009. (<u>Id.</u> at 37).

Kendall testified that he participated in a mediation with Charlton and Philip Works (another Human Resources employee) at the V.A., but the mediation did not go forward because, on that day, Kendall was informed that he had been terminated from the housekeeping aid position. (<u>Id.</u> at 89). Kendall was supplied with a Notification of Personnel Action signed by Bonnie Wax, Human Resources Officer, explaining that he was terminated during his trial period, effective March 16,

2009. (Kendall Dep. Doc. # 27-1 at 109; Doc. # 28-5 at 98).

Wax testified: "the position [housekeeping aid] had certain physical requirements, and Mr. Kendall did not – could not meet those physical requirements. And reasonable accommodations are only given when the candidate can do the job with or perform the essential functions with or without an accommodation." (Wax Dep. Doc. # 28-5 at 39). Wax confirmed that Kendall requested an accommodation, but "it was going to remove an essential function" of his job. (<u>Id.</u> at 39). Kendall was accordingly terminated during the trial period "a little over a month after employment started." (<u>Id.</u> at 42).

Kendall answered "yes" during his deposition when asked whether "mopping floors is a basic sort of necessary task for a housekeeper." (Kendall Dep. Nov. 17, 2015, Doc. # 27-1 at 95). Kendall contends that although his termination was effective March 16, 2009, he was not notified until May 19, 2009. (Doc. # 1 at ¶ 42).

### D. **Kendall's Federal Suits**

After substantial litigation at the EEOC level, Kendall initiated an employment discrimination action in this Court under case number 8:14-cv-924-T-33TGW. That action was dismissed without prejudice. On December 30, 2014, Kendall

initiated the present action against the V.A., containing two Complaint counts under the Rehabilitation Act of 1973, 29 U.S.C. § 701.

In count one, for "retaliation," Kendall alleges, inter alia, that:

> Plaintiff Tracy Lee Kendall engaged in the statutorily protected activities of applying for work as an engineering drafting technician and then of accepting a lower position as a housekeeping aid, reporting to work and informing supervisors of a disability and a need for reasonable accommodations. He suffered adverse employment actions of denial of the engineer position he was both qualified for and entitled to preference for, hired for a lower position, and then terminated. The causal link between these events is demonstrated, at least in part, by the close proximity in time to these events, which were less than four months apart. But for the discrimination and retaliation by Defendant's agents toward Plaintiff Tracy Lee Kendall, he would be employed as an engineer.

(Doc. # 1 at ¶ 52).

In count two, for "disability discrimination," Kendall alleges, inter alia, that:

> Plaintiff is Disabled under the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq. Tracy Lee Kendall was a qualified individual with accommodations for the housekeeping aid position. By creating the adversity of termination because of this disability within four months after being hired, Plaintiff Tracy Lee Kendall was unlawfully discriminated against because of the disability. He was also discriminated against because of his disability when he was not hired for the engineering position

(for which he would not have needed an accommodation but had informed the Defendant of his status as preferential as an above 30% disabled veteran) but offered the housekeeping aid position. His disability substantially limits one or more major life activities (standing at length, bend, walk, climb, working on wet floors, etc.). He was regarded by the defendant has being disabled. He was fired within four months after informing Defendant's agents of his request for reasonable accommodation. Plaintiff Tracy Lee Kendall was given pretextual reasons for the termination.

(Id. at ¶ 60). The V.A. seeks summary judgment as to both Complaint counts.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

11

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

## III. <u>Analysis</u>

### A. <u>Disability Discrimination</u>

"The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." <u>Tarmas v. Sec'y of the Navy</u>, 433 Fed. Appx. 754, 759 (11th Cir. 2011). Claims brought under the Rehabilitation Act are analyzed under the same standards as set forth in Title VII of the Civil Rights Act of 1964 and Title III of the Americans with Disabilities (ADA). <u>Id.</u> at 761, n.7.

"Under the Rehabilitation Act, a plaintiff can prove disability discrimination through either direct evidence of discrimination, or through circumstantial evidence." <u>Curry v. Sec'y Dep't of Veterans Affairs</u>, 518 Fed. Appx. 957, 963 (11th Cir. 2013). "If the plaintiff relies on circumstantial

13

evidence, the *McDonnell-Douglas* burden-shifting framework applies." Id.   Under this framework, "the plaintiff must establish a prima facie case for discrimination, the defendant must offer a legitimate, non-discriminatory justification for the employment decision, and the plaintiff must ultimately prove that the defendant's justification is a pretext for discrimination." Id.

Here, Kendall contends that he was discriminated against due to his disability in violation of the Rehabilitation Act (1) in his non-selection for the Drafting position; (2) with respect to his request for a reasonable accommodation in the housekeeping position aid; and (3) in his termination from the housekeeping position aid.   Kendall lacks direct evidence of discrimination and relies on circumstantial evidence. Accordingly, the Court will address each of Kendall's contentions utilizing the aforementioned burden-shifting mechanism.

### 1.   Non-Selection for Drafting Position

"In general, to establish a prima facie case of refusal to hire, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for a job for which the employer was seeking applicants; (3) she was rejected in spite of her qualifications; and (4) after her

14

rejection, the position remained open or was filled by a person outside of [her] protected class." <u>Enwonwu v. Fulton-Deklb Hosp. Auth.</u>, 286 Fed. Appx. 586, 601 (11th Cir. 2008).

The V.A. asserts that this case is governed by failure to promote cases, such as <u>Adams v. Cobb County School District</u>, 242 Fed. Appx. 616, 619 (11th Cir. 2007), which require similar elements. In such cases, a plaintiff may create a presumption of discrimination by showing that "(1) he is a member of a protected class; (2) he was qualified for, and applied for, the [position]; (3) he was rejected for the [position] despite his qualifications; and (4) another equally or less qualified employee, who is not a member of [the] protected class, was promoted to the [position]." <u>Id.</u>[2]

Under either test, Kendall satisfies his prima facie case based on the undisputed facts.  The V.A. remarks in its Motion for Summary Judgment that Kendall "is a veteran with a disability and . . . his education and work experience qualified him for the Drafting Position." (Doc. # 27 at 11). Thus, the first and second elements of the test are easily met.

---

[2] Kendall has cited only Seventh Circuit law, which is not helpful to the Court in making its summary judgment determination.

In addition, it can hardly be disputed that Kendall applied for the position and, despite his qualifications, he was rejected, thus satisfying the third element. In addition, the final element is met because Hanby, the individual that was selected and promoted to the Drafting position is not a veteran and is not disabled. According to Charlton, the Selecting Official, both Hanby and Kendall were qualified for the position, and he whittled the applicants down to Hanby and Kendall when making his final decision. (Charlton Dep. Nov. 16, 2015, Doc. # 27-2 at 26). This testimony and the testimony of the various Human Resources employees who were deposed in this case supports that Hanby, the selectee, was qualified for the position. For instance, Curt Lichtenberg testified that Hanby was qualified to fill the Drafting position because she was already a permanent government employee and based on her "duties" in prior positions held. (Lichtenberg Dep. Doc. # 28-7 at 17, 23).

Kendall's discrimination claim based on non-selection for the Drafting position is unsuccessful; however, because he is not able to rebut the V.A.'s legitimate and nondiscriminatory reason for selecting Hanby for the Drafting position. Charlton explained why he selected Hanby for the Drafting position as follows: "It came down to basically Mr. Kendall

16

and Ms. Hanby.   In looking at Mr. Kendall's experience, and looking at Debra's, Mr. Kendall had multiple jobs over a small timeframe, Ms. Hanby had one job with roughly nine years experience doing CADD, and seemed more stable to me for employment." (Charlton Dep. Nov. 16, 2015, Doc. # 27-2 at 26). Charlton also stated that Hanby had an advantage because she was familiar with the V.A. facility. (Id.).

In an effort to show that the V.A.'s proffered legitimate and non-discriminatory reason for selecting Hanby was just a pretext for disability discrimination, Kendall has offered his opinion that he was more qualified than Hanby, for instance, because his application packet was 27-pages long, and Hanby's was only three pages in length.  (Kendall Aff. Doc. # 28-1 at ¶ 9).  He also touts his formal education in comparison with her status as a high school graduate.  However, by focusing on his perceived superior education and skills, Kendall merely quarrels with the wisdom of the Selecting Official's reasons for selecting Hanby.  Kendall does not address the Selecting Official's reasons "head on." See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).

Additionally, Kendall supplies only conclusory assertions that  Hanby was less qualified, which is insufficient to show pretext. Instead, Kendall must present "concrete evidence in

17

the form of specific facts" rebutting the Selecting Official's reasons for picking Hanby over Kendall. <u>See</u> <u>Earley v. Champion Intern. Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990); <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000)("conclusory allegations without specific supporting facts have no probative value.").

Even assuming that Kendall was, in actuality, the superior candidate, he falls short of showing that there was a disparity in qualifications "of such weight and significance" that a reasonable employer could not have chosen Hanby over Kendall. <u>Kidd v. Mando Am. Corp.</u>, 731 F.3d 1196, 1206 (11th Cir. 2013).  On this point, the Eleventh Circuit has clarified that the inquiry is not who was a better candidate for the position, but rather whether the discrepancy is "so apparent as virtually to jump off the page and slap you in the face." <u>Cofield v. Goldkist, Inc.</u>, 267 F.3d 1264, 1268 (11th Cir. 2001). That is not the case here.  Kendall's resume was, indeed, lengthy and detailed, but it also showed what the Selecting Official picked up on – that Kendall bounced around from job to job and did not have a steady employment history. Hanby, on the other hand, had nine years doing CADD, and Charlton needed an individual with relevant CADD experience. (Charlton Dep. Nov. 16, 2015, Doc. # 27-2 at 26).  Thus, while

18

Kendall's formal education was superior, it did not render him a superior candidate for the position in the Selecting Official's eyes.

Kendall also asserts that the Selecting Official's decision was tainted by nepotism because two of Hanby's relatives also work for the V.A. However, these allegations, even if true, have no bearing on whether Kendall was the victim of disability discrimination under the Rehabilitation Act, and do not provide evidence that the decision to hire Hanby was motivated by discrimination against the disabled.

Kendall likewise contends that the Selecting Official's failure to follow certain preferences for disabled veterans in the hiring process establishes pretext. This argument also misses the mark. During his deposition, Kendall postulated that the V.A. "had certain responsibilities they had to go through before they could disqualify me for a position; and I don't feel they did that. Being in a protected class, by them selecting somebody and not - I don't know how to put I. Not going through the procedure they should have done for the disqualification, I just - felt that was a discriminatory act." (Kendall Dep. Doc. # 27-1 at 21-22).

The term Kendall appears to be grasping for is "pass over."  Curt Lichtenberg, a former V.A. Human Resources Specialist, testified:

> A pass over is generally used for positions that require a preference Veteran . . . have preference in order to be in the position.  And an example would be housekeeping aid, you must have Veterans preference to be in a housekeeping aid position. And if we had a housekeeping aid applicant that was a 10 point preference, and then there were some issues with that particular applicant, and there were legitimate reasons why the manager didn't want to select them, and they wanted to select a 5 point preference Veteran instead, well, then there's a procedure that you have to follow, and it has to all be submitted through the office of Human Resources Management, and to the office of Personnel Management to determine if they can pass over that individual, but it doesn't [apply] to this position.

(Doc. # 28-7 at 29-30).

During his deposition, Philip Works, also a Human Resources Specialist for the V.A., expounded upon when the "process known as pass over" applies. (Works Dep. Doc. # 27-3 at 19).  He testified that the pass over rules do not apply when a disabled Veteran, such as Kendall, competes with someone like Hanby - a civilian employee seeking a merit promotion. (Id. at 30).  On this topic, Bonnie Wax, a V.A. Benefits Administrator confirmed that the pass over rules do not apply. (Wax Dep. Doc. # 28-5 at 49).  Accordingly, the Court determines that the V.A. was not required to apply the

passover rules to Kendall, and these rules do not allow Kendall's disability discrimination claims to survive the Motion for Summary Judgment.

As stated by the court in <u>Alexander v. Fulton County, Georgia</u>, 207 F.3d 1303, 1341 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision." Furthermore, the Court does not "sit as a super-personnel department that reexamines" hiring decisions. <u>Davis v. Town of Lake Park</u>, 245 F.3d 1232, 1244 (11th Cir. 2001). As long as the V.A. made its hiring decision without regard to disability, the wisdom of the decision will not be second-guessed by the Court. "A plaintiff cannot establish pretext merely by showing he or she was better qualified than the hired candidate; the plaintiff must show the hiring decision was made because of an illegal motive." <u>Hillemann v. Univ. of Cent. Fla.</u>, 167 Fed. Appx. 747, 750 (11th Cir. 2006).

On this record, a reasonable juror could not find that the V.A.'s proffered legitimate and non-discriminatory reason for selecting Hanby over Kendall was a pretext for illegal discrimination because there is no evidence that Kendall's status as a disabled veteran had anything to do with his non-selection for the Drafting position. Accordingly, Kendall's claim for disability discrimination under the Rehabilitation

Act with respect to non-selection for the Drafting position fails as matter of law under the <u>McDonnell-Douglas</u> framework.

### 2.    <u>Failure to Accommodate</u>

Kendall alleges that the V.A. violated the Rehabilitation Act because it failed to provide a reasonable accommodation (no mopping or transfer to the Drafting position) after Kendall was hired as a housekeeping aid.  On February 1, 2009, Kendall began his employment as a housekeeping aid. (Kendall Dep. Doc. # 27-1 at 57-58).  He attended orientation for two days. (<u>Id.</u> at 58).  On February 9, 2009, he advised his supervisor that he could not perform the duties of a housekeeping aid because he could not be around wet floors or mop. (<u>Id.</u> at 59-60).  He asked to be transferred to the Engineering department to the Drafting position for which he was previously not selected. (Doc. # 1 at ¶ 33).  That day, Kendall received a reasonable accommodation packet to be completed by his physician. (Kendall Dep. Doc. # 27-1 at 63).

It is undisputed that Kendall cannot complete essential functions of employment as a housekeeping aid - mopping floors. (<u>Id.</u> at 95).  The V.A. accordingly terminated Kendall's employment during the trial period of his employment. (Wax Dep. Doc. # 28-5 at 39-42).

"To establish a prima facie claim of failure to accommodate under the Rehabilitation Act, [Kendall] must show that: (1) he was disabled; (2) he was a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." Skotnicki v. Bd. of Trs. of the Univ. of Ala., 631 Fed. Appx. 896, 903 (11th Cir. 2015). It is the plaintiff that bears the burden of identifying an accommodation that would allow a qualified individual to preform the job, and it is the employee who also bears the ultimate burden of persuasion to demonstrate that the accommodation is reasonable. Dalton v. CDC, 602 Fed. Appx. 749, 755 (11th Cir. 2015).

"The Rehabilitation Act may require an employer to transfer a disabled person to a vacant position as a reasonable accommodation; [h]owever, employers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as its exists." Id.

Kendall's reasonable accommodation claim fails because he admitted during his deposition that mopping floors was a necessary function for the housekeeping aid position and that he could not, and would not, mop. (Kendall Dep. Doc. # 27-1 at 95). Kendall reiterates in his affidavit that: "My reasonable

23

accommodation request was simply to ask that I not have to mop floors or work on wet floors.  This is reasonable." (Kendall Aff. Doc. # 28-1 at ¶ 14).

It is not disputed that Kendall is disabled.  But he fails to meet the second prong of his prima facie case because he is not a qualified individual.  He is not qualified because he admittedly cannot perform the essential functions of the position for which he was hired. (Kendall Dep. Doc. # 27-1 at 95). In addition, he has not demonstrated that his suggested accommodation (no mopping, or, in the alternative, transfer to the Drafting Position) was reasonable.  Furthermore, Kendall has not identified an open, funded position for which he qualifies.  See Dalton, 602 Fed. Appx. at 755.  Accordingly, the Court grants the V.A.'s Motion for Summary Judgment on this claim.

### 3.   Termination from Housekeeping Position

Kendall argues that he was discriminated against based on having a disability when he was terminated from the housekeeping aid position.  To establish a prima facie case of disability discrimination in this context, Kendall must demonstrate "(1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to

N of 31 PageID 650

unlawful discrimination as the result of his disability." Sutton v. Lader, 185 F.3d 1203, 1207-08 (11th Cir. 1999).

The V.A. agrees that Kendall is disabled.  However, the V.A. contends that Kendall's claim fails on the second element because he is not qualified for the position of housekeeping aid.  In essence, during his deposition, Kendall confirmed that mopping and being around wet surfaces was a necessary function of his employment as a housekeeping aid, and he could not perform. (Kendall Dep. Doc. # 27-1 at 95).

The court faced a similar quandary in Sutton. Sutton was hired by the Small Business Administration on February 2, 1994, for a thirty-day temporary appointment as a disaster relief construction analyst after a powerful earthquake occurred in California. 185 F.3d at 1206.  The "physically demanding" job involved "climbing and crawling inside collapsed buildings and other debris under disaster conditions and exposure to chemicals, fumes and dust." Id.

On the night before he was to begin his employment, Sutton suffered a heart attack and was hospitalized for approximately four days. Id.  A week later, Sutton contacted the SBA to make arrangements for his "return to work." Id. Sutton "was advised that he would need a medical release before the SBA could permit him to return to the physically

25

demanding   duties   as   a   construction   analyst." _Id._
Unfortunately, the next day, Sutton had a second heart attack,
necessitating bypass surgery. _Id._

Ten days later, Sutton "provided the SBA with a letter
from [his physician] stating that Sutton would be totally
disabled from February 3 through March 10, 1994" and partially
disabled for an extended period thereafter. _Id._  The letter
also warned that "Sutton could not lift, carry, climb, climb
ladders, or work around dust." _Id._ Sutton provided other
documentation to the SBA and requested that alternative
arrangements be made (including transfer to light duty and
transfer to a supervisory position), but, ultimately, the SBA
declined to offer Sutton any position.

Sutton sued the SBA under the Rehabilitation Act for
disability discrimination and prevailed at trial. However, the
Eleventh Circuit reversed, explaining:

> [I]n order to establish a prima facie case, Sutton
> must have demonstrated that he was "otherwise
> qualified" to do his job during the relevant time
> frame. In the employment context, an otherwise
> qualified person is one who can perform "'the
> essential functions' of the job in question with or
> without reasonable accommodation." 29 C.F.R. §
> 1630.2(m); _School Board of Nassau County v. Arline_,
> 480 U.S. 273, 275, 107 S. Ct. 1123, 94 L. Ed. 2d
> 307 (1987).  The district court in this case,
> however, made no finding that Sutton was able to
> "perform the essential functions" of the job of SBA
> construction analyst during the relevant time
> frame. [A]nd we conclude that no such finding can

26

be made on the evidence in this record. . . . **There is no obligation under the Act to employ people who are not capable of performing the duties of the employment to which they aspire."** Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987)(Rehabilitation Act permits employers to release a disabled or injured employee who cannot perform all of his duties); Southeastern Community College v. Davis, 442 U.S. 397, 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979)(Rehabilitation Act does not require employer to change job requirements or ignore the fact that the plaintiff could not perform them).

Id., at 1211 (emphasis added).

Just like Sutton, Kendall submitted medical documentation days after being hired reflecting that he could not perform the essential functions of his employment. And, just like Sutton, Kendall "has failed to make a prima facie case of employment discrimination under the Rehabilitation Act because there was insufficient evidence . . . that he was 'otherwise qualified' for the position of [housekeeping aid] during the relevant time frame." Id. Accordingly, the V.A. is entitled to summary judgment on Kendall's claim that he was discriminated against on the basis of his disability when he was terminated from the housekeeping aid position.

## B. **Retaliation**

"The Rehabilitation Act prohibits retaliation against an employee who has opposed disability discrimination." Simpson v. Ala. Dep't Human Res., 501 Fed. Appx. 951, 954 (11th Cir. 2012). In order to establish a prima facie case of

27

retaliation under the Rehabilitation Act, Kendall must show "(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal relationship between the two events." Id. Similar to his disability discrimination claims, in the absence of direct evidence of retaliation and discrimination, the Court utilizes the McDonnell-Douglas burden-shifting paradigm. Id.

The V.A. does not dispute that Kendall satisfies the first prong of his prima facie case because "[f]or retaliation purposes, the filing of a charge of discrimination is a statutorily protected activity." Id. The record also supports that Kendall requested an accommodation in light of his disability, which is also statutorily protected activity. See Frazier-White v. Gee, No. 15-12119, 2016 U.S. App. LEXIS 6318, at *19 (11th Cir. Apr. 7, 2016). In addition, the V.A. does not dispute that Kendall faced a materially adverse employment action because he was terminated from the housekeeping aid position.

As to the third and final element, Kendall attempts to demonstrate causation by pointing to the short period of time between the filing of his EEOC complaint and his termination as well as the timing of his request for a reasonable accommodation and his termination. For instance, in his

28

Complaint, Kendall alleges that the V.A. retaliated against him, inter alia, because "[h]e was fired within four months after informing Defendant's agents of his request for reasonable accommodation." (Doc. # 1 at ¶ 60).

The V.A. argues that Kendall cannot point to any evidence that any decision makers knew that Kendall filed an EEOC complaint. However, in addition to engaging in the protected activity of filing an EEOC complaint, Kendall requested an accommodation, which is also protected activity. Wax, the Human Resources Officer who signed off on Kendall's discharge from employment, was aware that he had requested an accommodation. (Wax Dep. Doc. # 28-5 at 39). Accordingly, because Kendall requested an accommodation in February of 2009, and was terminated in March of 2009, Kendall has stated a prima facie case of retaliation. Nevertheless, Kendall's retaliation claim fails because he cannot show that the V.A.'s reason for his termination was a pretext for illegal retaliation.

Here, the V.A. terminated Kendall during his probationary period because he could not perform the essential functions of a housekeeping aid. Kendall does not dispute that he cannot perform the essential functions of the housekeeping aid position. (Kendall Dep. Nov. 17, 2015, Doc. # 27-1 at 95).

Kendall has not met this reason "head on" and has not rebutted it.  He suggests that the V.A.'s reasons for terminating him shifted throughout the litigation, but he has not pointed to any evidence documenting such a shift. He has not shown the V.A.'s reason for terminating him is a mere pretext for retaliation.   Therefore, the V.A. is entitled to summary judgment on the retaliation claim.

## IV.   Conclusion

The existence of a mere scintilla of evidence in support of a non-moving party's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252. A party opposing summary judgment must "show specific facts exist that raise a genuine issue for trial." Dietz v. SmithKline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989).  And, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

<u>Saltzman v. Bd. of Comm'rs of the N. Broward Hosp. Dist.</u>, 239 Fed. Appx. 484, 487 (11th Cir 2007).

Kendall, confronted with the V.A.'s properly supported Motion for Summary Judgment, has not met its burden because he has not shown that specific facts exist that raise a genuine issue for trial and has not supported his conclusional allegations with an evidentiary foundation. For this reason, and for the reasons articulated above, the Court grants the V.A.'s Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The V.A.'s Motion for Summary Judgment (Doc. # 27) is **GRANTED.**

(2) The Clerk is directed to enter Judgment in favor of Defendant the V.A. and thereafter to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>27th</u> day of April, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

31